IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MAURICE JACKSON, # R-31861,    ) | |
| ) | |
| Plaintiff,    ) | |
| ) | |
| vs.    ) | Case No. 14-cv-511-JPG |
| ) | |
| DOWDY, LT. HUGHES,    ) | |
| SGT. LUEHR, C/O HART,    ) | |
| HOWARD HARNER,    ) | |
| and JANE and JOHN DOE KITCHEN    ) | |
| SUPERVISORS,    ) | |
| ) | |
| Defendants.    ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter is before the Court for a merits review of Plaintiff's complaint (Doc. 7), filed on June 9, 2014. Plaintiff is currently incarcerated at Menard Correctional Center ("Menard"), where he is serving a 40-year sentence for murder. This case was opened on May 5, 2014, when Plaintiff submitted a Motion for Preliminary Injunction "Immediately" (Doc. 1). The Court denied that motion, and ordered Plaintiff to submit a proper complaint so that an assessment could be made of his claims and the basis for jurisdiction (Doc. 6).

Plaintiff's original motion for injunctive relief referenced potential claims that (1) some Defendants had filed false disciplinary reports against Plaintiff and that his due process rights were violated in the disciplinary hearing(s); (2) several Defendants had retaliated against him because Plaintiff previously brought suit against them in this Court; and (3) other officials failed to protect Plaintiff from an attempted sexual attack by his cellmate, for which he did not receive medical care. The instant complaint (Doc. 7) includes claims related to items (1) and (2) above,

and does not include the failure to protect claim (3).  Plaintiff just recently filed another action in this Court, *Jackson v. Phoenix, et al.*, Case No. 14-cv-720-NJR (filed June 24, 2014), in which it appears he will pursue the failure to protect claim.  Thus, that matter shall not be addressed in this case.

**The Complaint (Doc. 7)**

The complaint consists of ten pages, and Plaintiff includes a legal memorandum and exhibits totaling 38 additional pages.  He alleges that Defendant Sgt. Luehr and Defendant Kitchen Supervisor Dowdy each fabricated a disciplinary report against him (Doc. 7, pp. 1, 4-5; Doc. 7-1, pp. 13-15; Doc. 7-2, p. 1).  Prior to the first incident, Plaintiff had been experiencing continuing problems with kitchen supervisors and inmate workers tampering with and contaminating his kosher meals.[1]  He filed numerous complaints over these issues.  On February 18, 2014, when he went through the chow line, the inmate server tossed Plaintiff his tray, causing the plastic covering to break open and spill salad over the counter area.  Plaintiff reached through the chuckhole to re-seal the tray, and determined it had been tampered with and contaminated.  He got into a verbal argument with the inmate, and then asked Defendant Dowdy for a new tray, which he denied.  Plaintiff then took a regular meal tray so that he could eat, and had words with Defendant Dowdy.  Later that night, Plaintiff received a ticket in which Defendant Dowdy falsely claimed that Plaintiff had attempted to steal a piece of cake, contaminating the sheet cake with his hand (Doc. 7-1, p. 14).  None of the facts related by Plaintiff were included in the statement of the charges.

The following day (February 19), despite the pending ticket, Plaintiff was allowed to go to chow.  On the way there, he was accosted by Defendant Sgt. Luehr, who asked him if he was

---

[1] In 2013, Defendant Harner, the prison chaplain, had approved Plaintiff's request to receive kosher meals in accordance with his religious beliefs, after Plaintiff filed a grievance and a lawsuit against him (Doc. 7, p. 5).

the guy who had written up other officers for sexual assault (Doc. 1, p. 4).  Plaintiff acknowledged that he had to do so for his own protection.  Defendant Luehr commented that "someone needed to teach [Plaintiff] a lesson." *Id*.  Over the next several days, Defendant Luehr continued to make remarks such as "you going to get yours" each time he would see Plaintiff.

On February 26, 2014, after going to chow at lunch and noting Defendant Luehr was not there, Plaintiff decided to stay in his cell at dinner time, in part to avoid encountering Defendant Luehr (Doc. 7, p. 5).  The next day (February 27) Plaintiff was placed on "deadlock" for a disciplinary ticket.  This ticket, written by Defendant Luehr, stated that on February 26, Plaintiff had stepped out of the chow line to get his diet tray out of turn, and ignored Luehr's orders to return to the back of the line (Doc. 7-2, p. 1).  Plaintiff argues that this had to be fabricated, because he did not attend chow on that day when Defendant Luehr was on shift (Doc. 1, p. 1). On February 28, 2014, the diet tray delivered to Plaintiff's cell contained a threatening message inside the tray lid, stating "you going to get yours, just watch and see, real soon" (Doc. 7, p. 5). Plaintiff wrote to the warden to complain, but got no response.  The same thing happened the next day.

Both disciplinary tickets were heard on March 4, 2014, by adjustment committee members Defendants Hughes and Hart.  Plaintiff submitted a written statement and three witness affidavits, and requested that his witnesses be called to the hearing.  Defendant Hughes refused to call any witnesses (Doc. 1, p. 5).  Plaintiff was found guilty of both infractions, and sentenced to three months in segregation for each ticket (for a total of six months).  He was also charged $14.40 in restitution for the contaminated cake.

Plaintiff's second claim focuses on the ongoing contamination and tampering with his kosher meals, which he alleges has been carried out by Defendant Harner and the John/Jane Doe

Dietary Supervisors in retaliation for the complaints he has lodged against them. The problems with his meals began around October 1, 2013, not long after Plaintiff filed a lawsuit against Defendant Harner[2] (Doc. 7, p. 6). His food trays often arrive with the covers torn open, with some food items removed from the tray, or containing what appears to be saliva, tobacco juice, or other foreign material. He describes one incident where his food was covered with a black substance that appeared to be a mixture of dirty cooking grease and water (Doc. 7, p. 8).

Plaintiff also complains that the kosher menu plan, allegedly approved by Defendant Harner, is nutritionally inadequate (Doc. 7, pp. 5-6). On top of that, the food he is served is often spoiled and inedible, further depriving him of sufficient nourishment and endangering his health. The salad and fruit is rotten, and the T.V. dinners are sour, undercooked, or raw. As a result of the retaliatory tampering, the deficiencies in the makeup of the kosher meals, and the spoilage, Plaintiff has often not received adequate food to meet his nutritional needs, and has become ill with what he believes to be food poisoning (Doc. 7, pp. 7-8). He sought and received some treatment, including medications, for severe stomach pains in January and April 2014. Although he was not entirely satisfied with the adequacy of his medical care, he does not bring any claim against the medical professionals who treated him.

Plaintiff's exhibits include a supplemental statement noting that dietary staff including C/O Fitzgerald (who is not named as a Defendant) are continuing to contaminate Plaintiff's food and to serve it raw, undercooked, and/or spoiled (Doc. 7-1, p. 6). Certain food items have been omitted from his trays in retaliation for the grievances he has filed. *Id.* Plaintiff went on a hunger strike on May 5, 2014, to avoid further food poisoning and contamination, and as of the time he prepared his statement, had refused food for 18 days. He estimated that he had lost 20

---

[2] *Jackson v. Harner, et al.*, Case No. 13-cv-825-MJR-SCW, was severed from Case No. 13-cv-714 on August12, 2013.

pounds, dropping from 220 to 200 pounds.  During that time, Plaintiff received medical treatment for his stomach pain.

Plaintiff requests compensatory and punitive damages for the alleged violations of his constitutional rights (Doc. 7, pp. 9-10).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into three counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

**Count 1:**  Defendants Luehr, Dowdy, Hughes, and Hart deprived Plaintiff of a liberty interest without due process, when Luehr and Dowdy fabricated disciplinary reports, and Hughes and Hart found Plaintiff guilty of the infractions without allowing him to call witnesses, then punished him with six months in segregation;

**Count 2:**  Defendants Harner and the Jane/John Doe Kitchen Supervisors retaliated against Plaintiff for pursing grievances and/or lawsuits against them, by tampering with and contaminating Plaintiff's kosher food trays;

**Count 3:**  Defendant Harner, Defendants Jane/John Doe Kitchen Supervisors, and C/O Fitzgerald subjected Plaintiff to unconstitutional conditions of confinement in that they provided him with kosher meals that were nutritionally inadequate, spoiled, improperly cooked, and contaminated.

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff's claims in **Counts 2 and 3** survive § 1915A review.  The Clerk shall be directed to add C/O Fitzgerald as a Defendant.  These counts shall be referred to the United States Magistrate Judge for further consideration.

However, **Count 1** fails to state a claim upon which relief may be granted, and shall be

dismissed for the following reasons.

In *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984), the Seventh Circuit held that the filing of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974) (advance written notice of the charge, right to appear before the hearing panel, the right to call witnesses if prison security allows, and a written statement of the reasons for the discipline imposed). The Seventh Circuit reasoned that prisoners have a right "to be free from arbitrary actions of prison officials," *Hanrahan*, 747 F.2d at 1140, but determined that the procedural protections outlined in *Wolff* provided the appropriate protection against arbitrary actions taken by a correctional officer such as issuing the inmate a fabricated conduct violation. Due process also requires that the findings of the disciplinary tribunal must be supported by some evidence in the record. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). However, even a meager amount of supporting evidence is sufficient to satisfy this inquiry. *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007); *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994).

In Plaintiff's case, he claims that Defendant Hughes did not allow him to call witnesses to his disciplinary hearing. He was allowed to present written statements from those witnesses, as well as his own statement (Doc. 7, p 5). The inability to call witnesses may amount to a denial of the procedural due process requirements outlined in *Wolff*. However, even in light of this possible procedural violation, the complaint does not show that Plaintiff was deprived of a protected liberty interest when he was placed in segregation.

An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her disciplinary confinement impose "atypical and significant

hardship[s] . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small"). For prisoners whose punishment includes being put in disciplinary segregation, under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997).

The Seventh Circuit has elaborated two elements for determining whether disciplinary segregation conditions impose atypical and significant hardships: "the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original). The first prong of this two-part analysis focuses solely on the duration of disciplinary segregation. For relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary. *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence"). In these cases, the short duration of the disciplinary segregation forecloses any due process liberty interest regardless of the conditions. *See Marion*, 559 F.3d at 698 ("we have affirmed dismissal without requiring a factual inquiry into the conditions of confinement"). Even a six-month term in disciplinary segregation may not implicate constitutional concerns. In *Hardaway v. Meyerhoff*, 734 F.3d 740, 743-44 (7th Cir. 2013), the Seventh Circuit revisited its observation in *Marion* that six months in segregation "is not such an extreme term and, standing alone, would not trigger due process rights." 734 F.3d at 744 (quoting *Marion*, 559 F.3d at 698) (internal quotations omitted). It then reviewed the

conditions of the plaintiff's confinement, which included being housed behind a solid cell door with an aggressive cellmate, and being limited to once-a-week access to the shower and prison yard. These conditions did not represent an "atypical and significant hardship" in relation to the ordinary conditions prevailing in non-disciplinary segregation.

In Plaintiff's case, he was punished with a total of six months in segregation. This may be long enough to trigger an inquiry into the conditions of that confinement, if the segregation was imposed after a procedurally flawed hearing. However, in the context of Plaintiff's total sentence of 40 years, even a six-month segregation term is comparatively brief. *See Marion*, 559 F.3d at 697-98 n.2 (70-day segregation period is "relatively short" in the context of a 12-year prison sentence, citing *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997)).

Turning to Plaintiff's allegations regarding the conditions of his segregation, there is nothing in the complaint that indicates he was subjected to any "atypical or significant hardship" as a result of his disciplinary confinement. His only complaints about his segregation conditions involve the food contamination, tampering, and inadequacies that are the subject of Counts 2 and 3 (Doc. 7-1, pp. 2-3). These problems had been occurring for several months before Plaintiff was ever charged with the disciplinary infractions, and continued with the kosher trays Plaintiff received in his segregation cell (Doc. 7, pp. 5-7). These facts do not suggest that Plaintiff's confinement in punitive segregation is any more onerous than if he had been in administrative segregation (or even in the general population). To the contrary, as Plaintiff describes them, the prevailing conditions appear to be the same.

In summary, Plaintiff has failed to state a claim for having been deprived of a liberty interest without due process, based on his six-month disciplinary segregation, even where he may have been denied his right to call witnesses as outlined in *Wolff v. McDonnell*, 418 U.S.

539, 563-69 (1974).  **Count 1** shall therefore be dismissed with prejudice, as shall Defendants Hughes and Hart.  Defendants Dowdy and Luehr shall be dismissed from the action without prejudice.

**<u>Disposition</u>**

The Clerk is **DIRECTED** to add the following party Defendant:  **C/O FITZGERALD**.

**COUNT 1** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.  Defendants **HUGHES** and **HART** are **DISMISSED** from this action with prejudice.  Defendants **LUEHR** and **DOWDY** are **DISMISSED** from this action without prejudice.

The Clerk of Court shall prepare for Defendants **HARNER** and **FITZGERALD**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John/Jane Doe) Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint.  Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to a Defendant who no longer can be found at the work address provided by

Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Philip M. Frazier** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Frazier for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give

security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: June 30, 2014**

*s/ J. Phil Gilbert*
United States District Judge